Roger COLLINS, Petitioner–Appellant, Cross–Appellee,

v.

Walter ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent–Appellee, Cross–Appellant.

No. 86–8439.

United States Court of Appeals, Eleventh Circuit.

Jan. 8, 1990.

See also, 246 Ga. 261, 271 S.E.2d 352.

**1504**

Christine A. Freeman, Nashville, Tenn., Ralph Goldberg, Atlanta, Ga., Bryan Stevenson, Alabama Resource Center, Montgomery, Ala., Palmer Singleton, State Univ. of New York at Buffaloe, School of Law, O'Brien Hall, Buffaloe, N.Y., for petitioner-appellant, cross-appellee.

William B. Hill, Jr., Asst. Atty. Gen. of Ga., Atlanta, Ga., for respondent-appellee, cross-appellant.

Before TJOFLAT, Chief Judge, VANCE * and KRAVITCH, Circuit Judges.

PER CURIAM:

This case involves a second federal habeas corpus proceeding brought by Roger Collins, a Georgia death row inmate, challenging his conviction for murder. In the present proceeding, Collins raises two grounds for relief. First, he claims that an instruction to the jury during the guilt phase of his trial impermissibly shifted to him the burden of proof on intent in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Although a panel of this court rejected the same claim in Collins' first habeas petition, *see Collins v. Francis*, 728 F.2d 1322, 1330–31 (11th Cir.) (*Collins I*), *cert. denied*, 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984), Collins now argues that new caselaw undermines that decision. Second, Collins claims that the trial court

erroneously admitted into evidence a statement that he made during a police-initiated interrogation after he had asserted his sixth amendment right to counsel at his arraignment and that under *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the statement was inadmissible. Although *Jackson* was decided after *Collins I*, Collins argues that it applies retroactively.

The State contends that Collins raised both claims in his first petition, which *Collins I* decided on the merits, and that this second petition should therefore be dismissed as an abuse of the writ under Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 (1982).[1]

The district court held that Collins' *Jackson* claim presented a new ground for relief under Rule 9(b) and then considered both of Collins' claims on their merits.[2] The court denied Collins relief on his *Sandstrom* claim, holding that the new caselaw cited by Collins did not undermine this court's prior decision in *Collins I*. The court then denied him relief on his *Jackson* claim, holding that *Jackson* did not apply retroactively.

We hold that both claims require dismissal under Rule 9(b), and we therefore affirm the district court's denial of relief.

**I.**

The facts and procedural history of this case are presented in detail in *Collins I*. We restate them here only briefly. In the early morning of August 7, 1977, after a night of drinking alcohol and smoking pot, Collins and two friends named William Durham and J.C. Styles went for a joyride in Collins' car. They noticed a woman named Delores Lester and convinced her to join them in the car. They then drove to a

---

* Judge Robert S. Vance was a member of the panel which heard oral argument but due to his death on December 16, 1989 did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

1. As we discussed below, *see* text *infra* at 1505, "abuse of the writ" does not properly apply here as a basis for dismissing Collins' successive claims.

2. The district court apparently believed that if either claim satisfied Rule 9(b)'s "new or different grounds for relief" requirement, the court could then address both claims raised in the petition. Under Rule 9(b), however, a court must independently examine each claim in a petition before addressing the claim on its merits.

pecan orchard in Houston County, Georgia and raped Lester. After the rape, Durham led Lester into the orchard at knife point. Collins took a tire jack from his car and followed them. In the orchard, Lester was brutally murdered with the tire jack. The two men returned to the car with Durham carrying the jack. Later that morning, Styles confessed; the police then arrested Collins and Durham.

At trial, the State argued that Collins had swung the tire jack that had killed Lester. Collins contended that Durham, and not he, had swung the jack. The jury found Collins guilty of malice murder and sentenced him to death.

## II.

■ Under Rule 9(b) of the Rules Governing Section 2254 Cases,

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new or different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

28 U.S.C. foll. § 2254 (1982). As the Supreme Court has explained, the term "grounds" in Rule 9(b) means "a sufficient legal basis for granting the relief sought by the applicant." *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963). Thus, a ground for relief is equivalent to a legal claim. Both a ground and a claim, however, differ from legal or factual arguments, which serve as predicates for legal claims. A single claim, moreover, may be supported by several different predicate arguments. For purposes of Rule 9(b), then, a petitioner must raise a new or different *claim;* a new or different *argument* (legal or factual) in support of a claim that was already raised

and decided on the merits is not sufficient to prevent dismissal of the claim. *See id.*

■ Rule 9(b) provides two bases for dismissal of a claim presented in a successive petition: (1) the claim was already raised and decided on the merits in the previous habeas proceeding and thus presents no "new or different grounds for relief"; or (2) the claim was not raised in the prior proceeding but should have been and thus constitutes "an abuse of the writ." *See Sanders*, 373 U.S. at 15–19, 83 S.Ct. at 1077–79; *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986) (plurality). Even if a petitioner's claim warrants dismissal under the Rule, a court can nevertheless hear the claim if the "ends of justice" so require. *See Sanders*, 373 U.S. at 15–17, 83 S.Ct. at 1077–78; *see also Kuhlmann*, 477 U.S. at 444–45, 106 S.Ct. at 2622; *Messer v. Kemp*, 831 F.2d 946, 958 (11th Cir.1987) (en banc), *cert. denied sub nom. Messer v. Zant*, 487 U.S. 1211, 108 S.Ct. 2859, 101 L.Ed.2d 896 (1988); *see also Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir.1987) ("ends of justice" justified consideration of second petition even though an abuse of writ).[3] In analyzing "the ends of justice," a court may consider new *arguments* (based, for example, on intervening changes in the law) that a petitioner raises in support of an old claim. *See Sanders*, 373 U.S. at 16–17, 83 S.Ct. at 1078.

Applying these standards to the present case, we first consider whether Collins' claims raise any "new or different grounds for relief," and if not, whether the "ends of justice" require us to reconsider them nevertheless.

## III. *Sandstrom* claim.

Collins claims that the trial court's instruction to the jury on intent impermissibly shifted the burden of proof to him in

---

**3.** Under *Davis,* the "ends of justice" exception applies to claims constituting an abuse of the writ as well as to claims raising no new or different grounds for relief. As a result, a court should first determine, without reference to the "ends of justice," whether a claim is abusive. The court should then determine whether the

"ends of justice" exception applies. The preliminary question of abuse of the writ, however, typically involves considerations of justice and fairness to the petitioner; were it not for *Davis,* the "ends of justice" determination might more appropriately be included in the abuse-of-the-writ analysis itself.

violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Sandstrom* error occurs when a trial court's instruction to a jury shifts the burden of proof to a defendant on a fact necessary to constitute a crime. As the Supreme Court explained in *Rose v. Clark,* 478 U.S. 570, 580, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986), "*Sandstrom* was a logical extension of the Court's holding in *In re Winship,* 397 U.S. 358, [364,] 90 S.Ct. 1068, [1073,] 25 L.Ed.2d 368 (1970), that the prosecution must prove 'every fact necessary to constitute the crime with which [the defendant] is charged' beyond a reasonable doubt." *Sandstrom* error, however, does not automatically require reversal of an otherwise valid conviction; it is subject to harmless error analysis under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Rose,* 478 U.S. at 579–80, 106 S.Ct. at 3107; *see Stephens v. Kemp,* 846 F.2d 642, 659–62 (11th Cir.1988); *id.* at 662–65 (Tjoflat, J., specially concurring).

In the instruction at issue here, the trial judge stated:

> A presumption is a conclusion which the law draws from given facts. Each of the following presumptions that I am going to give you is rebuttable; that is, each is subject to being overcome by evidence to the contrary. Every person is presumed to be of sound mind and discretion. *The acts of a person of sound mind and discretion are presumed to be the product of the person's will. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts.* A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the acts, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is tried.

(Emphasis added.) Collins makes two arguments in support of his *Sandstrom* claim. First, he contends that his return to the car for the tire jack supports a variety of inferences. That he intended to use the jack to murder Lester is, according to him,

one such inference. He argues therefore that the instruction impermissibly allowed the jury to presume that he intended to kill Lester with the tire jack and that the error was not harmless beyond a reasonable doubt.

Second, Collins argues that the State presented alternative theories of liability in this case. Collins contends that, in addition to a malice murder theory, the prosecutor introduced an aiding and abetting theory in her closing argument and that the judge instructed the jury on that theory as well. As a result, Collins argues that this case is controlled by *Drake v. Kemp,* 762 F.2d 1449 (11th Cir.1985) (en banc), a case decided after *Collins I* in which we granted relief on a *Sandstrom* claim because the State had presented an alternative theory of liability.

### A.

■ We first conclude that Collins has failed to raise new or different grounds for relief. He has presented two new arguments in support of his *Sandstrom* claim, but as we discuss above, new *arguments* are not equivalent to new *grounds for relief.* He has already raised his *Sandstrom* claim—although supported by different arguments—and that claim has been decided on the merits. *See Collins I,* 728 F.2d at 1330–31. We must therefore dismiss his *Sandstrom* claim in the present case, unless Collins proves that the "ends of justice" require us to hear it anew. We consider in turn whether relitigation of Collins' *Sandstrom* claim on the basis of either of his arguments would serve the "ends of justice."

### B.

■ With respect to Collins' first argument, we conclude that relitigating his *Sandstrom* claim would not serve the "ends of justice." The argument is merely a slightly different version of a more general argument made by Collins in his earlier petition that the jury instruction violated *Sandstrom* by impermissibly shifting the burden of proof to him on the issue of

intent. In *Collins I*, we assumed that the instruction violated *Sandstrom* but held that the error was harmless. *See* 728 F.2d at 1330–31; *id.* at 1350–52 (Tjoflat, J., specially concurring). As we discussed, Collins' trial revolved around a factual question whether Collins or his cohort, Durham, had struck the victim with the jack. The prosecutor contended throughout the trial that Collins had struck the blows; Collins contended that Durham had struck them. Collins, however, never disputed that whoever had struck the blows intended to kill the victim. Thus, the case depended entirely on a question of *identity* rather than a question of *intent.* Because the impermissible instruction referred only to the issue of intent, we held that the error was harmless.

We conclude that Collins' argument in the present case does not alter that holding and therefore that relitigation of his *Sandstrom* claim on the basis of that argument would not serve the "ends of justice." In order to make clear why this is the case, we retrace the harmless error analysis of *Collins I.*

### 1.

The portion of the jury instruction at issue both in *Collins I* and here states: "The acts of a person of sound mind and discretion are presumed to be the product of the person's will. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts." This presumption operates by first focusing on a given *act* and then presuming from that act an ultimate *fact:* that is, the instruction asks the jury to isolate a specific act; then to consider the natural and probable consequences of that act; and finally to presume that because the defendant committed that act, he intended the act's natural and probable consequences. Thus, the presumption yields the ultimate fact of the defendant's intent. Because the presumption begins with a specific act and yields a specific factual finding, it can prove harmless in a given case for one of two reasons: either (1) because the defendant conceded the ulti-

mate fact at issue, or (2) because the evidence regarding that fact was so overwhelming that the jury need not have relied on the presumption in making its finding.

A hypothetical shooting case will clarify how both the presumption and the harmless error analysis work. Assume that a defendant shoots a victim in the heart and the victim dies instantly from the gunshot wound. The shooting consists of several independent actions each of which has a natural and probable consequence. First consider the act of pulling the gun trigger: the natural and probable consequence of that act is to discharge a bullet. Now, take the act of aiming the gun when pulling the trigger: as the natural and probable consequence of that act, the discharged bullet will move in the direction the gun is aimed. If the gun is aimed at the victim's body, then the natural and probable consequence of pulling the trigger is that the bullet will hit the body at the point where the gun is aimed. Thus, if the gun is aimed at the victim's heart, the natural and probable consequence of pulling the trigger is that the discharged bullet will strike the victim's heart and almost certainly kill him.

In this hypothetical shooting case, an instruction to the jury that "a person is presumed to intend the natural and probable consequences of his act" would force the jury to conclude that the shooter intended to kill the victim, unless the defendant could prove otherwise. The instruction, therefore, would shift the burden of proof on the issue of intent to the defendant (assuming the State proved him to be the shooter) in violation of *Sandstrom.* That instruction, however, could still constitute harmless error for either of the reasons noted above. Under the first reason, the defendant could concede the ultimate fact yielded by the presumption—that the shooter intended to kill the victim. For example, the defendant might argue that he was wrongly identified as the shooter. Such a defense would not dispute the fact that the actual shooter intended to kill the victim; it would merely dispute that the defendant was the shooter. If the jury decided that the defendant was in fact the

shooter, then the burden-shifting instruction would constitute harmless error.

Under the second reason, the presumption would be harmless error if evidence of the ultimate fact that the defendant intended to kill was overwhelming. Thus, if the evidence at trial showed that the defendant pointed the gun directly at the victim's heart and pulled the trigger at point blank range, then the jury would not have had to rely on the erroneous presumption in finding the defendant's intent to kill.

In contrast, if the defendant contended that he did not intend to kill the victim and the evidence at trial was not so overwhelming, then the impermissible presumption would not be harmless. For example, in *Franklin v. Francis,* 720 F.2d 1206 (11th Cir.1983), *aff'd,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), an escaped convict rang a door bell, pointed his gun at the man who opened the door, and attempted to steal the man's car keys. The man refused to provide his keys and slammed shut the door. The convict's gun discharged; a bullet ricocheted off the door frame, hit the man, and killed him. The defendant argued that he did not intend to kill the man, and as this court held, "[t]he facts did not overwhelmingly preclude that defense," *id.* at 1212. Thus, neither of the reasons supporting a determination of harmless error applied in that case: the defendant did not concede the ultimate fact at issue—that he intended to kill—nor was the evidence so overwhelming that the jury could have found an intent to kill without relying on the impermissible instruction. We therefore held the instruction to be harmful, *id.,* and the Supreme Court approved our analysis, 471 U.S. at 325–26, 105 S.Ct. at 1977.

Applying a harmless error analysis in *Collins I,* we concluded that the instruction at issue was harmless for the first reason—because Collins had conceded the ultimate fact yielded by the presumption. The act upon which the presumption focused in *Collins I* (as well as in the present case)

was the swinging of the tire jack. The ultimate fact yielded by the presumption was that whoever swung the jack intended to kill the victim. As discussed above, Collins contended that Durham, and not he, had swung the jack. The issue of intent, however, had no bearing on that defense, and Collins never disputed the fact that whoever actually swung the jack intended to kill the victim—the ultimate fact yielded by the presumption. Because Collins conceded that fact, we held that the *Sandstrom* error was harmless.[4]

### 2.

Turning to Collins' argument in the present case, we conclude that he has simply presented a more specific version of his general challenge in *Collins I.* He directs our attention from the primary act at issue—the swinging of the tire jack—to certain preliminary acts, specifically (1) his return to the car to get the jack in the first place and (2) his carrying the jack into the orchard. He argues that a jury could draw several inferences from these actions, one of which would be that he intended to murder the victim. To the extent that the presumption led the jury to infer from these actions that he intended to murder the victim, Collins contends that the presumption was harmful error.

This argument assumes that murder is a natural and probable consequence of these preliminary acts. It is not. Consider Collins' action in taking the tire jack from his car trunk. Barring the absurd, the natural and probable consequences of that action are rather limited. One consequence is that the trunk will no longer contain a tire jack; another is that Collins will hold the jack in his hands. Thus, with respect to this preliminary action, the burden-shifting presumption on intent requires the jury to conclude only that Collins intended to remove the tire jack from the trunk. Applying this analysis to the second preliminary action—Collins' carrying the jack into the orchard—the natural and probable conse-

---

**4.** We note in passing that we could also have found the error harmless for the second reason: the evidence that whoever actually swung the jack intended to kill was so overwhelming that the jury need not have relied on the presumption.

quences are again limited: the tire jack merely ends up in the orchard. Thus, the presumption yields the ultimate fact that Collins intended to take the jack into the orchard.

From these preliminary acts, therefore, the improper instruction would yield no inference of Collins' intent to kill. To the extent that the presumption yields any facts at all regarding Collins' intent, he has already conceded those facts at trial. Clearly, he intended to remove the jack from the car and to carry it into the orchard; his present argument presupposes that intent. Because Collins has already conceded the ultimate facts yielded by the presumption, the error is harmless.

This argument, moreover, raises no dispute concerning the primary act at issue in this case—the swinging of the jack—and the inference from that act that whoever swung the jack intended to kill. Collins conceded that point at trial, and his attempt to redirect our attention to certain preliminary acts raises no challenge to that inference of intent now.[5] Just as in *Collins I*, Collins' argument here fails to focus on the specific act—the swinging of the jack—that yielded the ultimate fact of intent to kill. For this reason as well, his argument misses the mark.

### 3.

Because Collins' argument fails to persuade us to reconsider our holding in *Collins I* that the *Sandstrom* error was harmless, we conclude that the "ends of justice" do not require relitigation of Collins' *Sandstrom* claim.

### C.

■ We next address Collins' argument that because the State prosecuted him under alternative theories of liability, he is entitled to relief under *Drake v. Kemp*, 762 F.2d 1449 (11th Cir.1985) (en banc). Because *Drake* was decided after *Collins I*, Collins asserts that redetermination of his *Sandstrom* claim based on this intervening caselaw would serve the "ends of justice."

Based on our examination of the record in the present case, however, we conclude that this case is distinguishable from *Drake*. Because *Drake* does not control, the "ends of justice" require no redetermination of Collins' *Sandstrom* claim.

In *Drake*, this court granted a habeas petitioner relief based on a *Sandstrom* claim that challenged an instruction identical to the one involved here. The jury had returned a general verdict of guilty on an indictment that included an aiding and abetting count as well as a murder count. Thus, as this court found, the jury might have convicted the defendant only on the aiding and abetting theory, which required proof that the defendant himself intended to aid and abet the actual killer in addition to proof that the actual killer intended to kill. 762 F.2d at 1456. Overwhelming evidence in *Drake* did indicate that the actual killer intended to kill, and we noted that if the State had prosecuted the case solely under a malice murder theory, the *Sandstrom* error would have been harmless. *Id.* at 1455. The evidence regarding the defendant's own intention to aid and abet, however, was not sufficiently overwhelming to render the erroneous instruction harmless in light of the jury's general verdict. We, therefore, granted the petitioner relief. *Id.* at 1456–57.

The present case, however, is distinguishable from *Drake*. In *Drake*, "[t]he aiding and abetting theory was prominent throughout the trial." 762 F.2d at 1456. The indictment included a charge for aiding and abetting. Both the prosecutor's and defense counsel's opening and closing statements referred explicitly to the theory: the prosecutor in fact began his closing argument by reading from the Georgia accomplice liability statute and quoting an aiding and abetting case. The trial court charged the jury on that theory, and as we noted, "the choice to convict Drake of armed robbery and murder solely on the basis of Drake's aiding and abetting the crimes committed ... was squarely before the jury." *Id.* Moreover, the district court

---

5. Even if Collins did challenge this issue of intent, the evidence on that point, as we suggest

above, *see supra* note 3, was so overwhelming that the presumption would remain harmless.

found that the State had in fact proceeded on an aiding and abetting theory. *Id.* n. 8.

The present case, however, involved solely a malice murder theory. The indictment, unlike the indictment in *Drake*, included no aiding and abetting count; the prosecutor and defense counsel argued only the malice murder theory; the court charged the jury on that theory only; and the jury clearly convicted Collins on that count alone. Collins, though, would have us believe that an offhanded analogy in the prosecutor's closing speech to a "wheel man" in a bank robbery demonstrates the presence of an alternative theory of liability for aiding and abetting. Although that reference, lifted from the transcript and standing alone, might suggest the presence of an aiding and abetting theory, we conclude that when properly read in the context of the trial as a whole, that reference alone does not support Collins' assertion that the State proceeded on alternative theories of liability. *Drake*, therefore, does not control the present case.

Because *Drake* does not control, we hold that the "ends of justice" do not require relitigation of Collins' *Sandstrom* claim.

### IV. *Michigan v. Jackson* claim.

Collins next challenges the trial court's admission into evidence of a statement that Collins made after his request at arraignment for a court-appointed counsel.[6] Collins claims that the statement was obtained in violation of *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Jackson*, a case decided after *Collins I*, the Supreme Court held that the bright-line rule articulated in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which prohibits police-initiated interrogations after a defendant

has asserted his fifth amendment right to counsel, also applies when a defendant has asserted his sixth amendment right to counsel "at an arraignment or similar proceeding." *Id.* 475 U.S. at 636, 106 S.Ct. at 1411.

### A.

 We first conclude that Collins' *Jackson* claim raises no new grounds for relief. In *Collins I*, Collins challenged the admission into evidence of this statement; the panel in that case addressed the claim on its merits and dismissed it. *See* 728 F.2d at 1331–34. Of course, Collins had based his claim in that case on *Edwards* rather than on *Jackson*, which provides the basis for his claim in the present case. Reliance on *Jackson* as opposed to *Edwards*, however, merely provides a different legal predicate for the same claim—that Collins' statement was improperly admitted into evidence.[7] New legal arguments do not satisfy Rule 9(b)'s requirement of "new or different grounds for relief."[8] We therefore conclude that Collins' *Jackson* claim requires dismissal under Rule 9(b) unless the "ends of justice" exception applies.

### B.

 We conclude that the "ends of justice" would not be served by litigating Collins' *Jackson* claim. As we discuss, the rule in *Jackson*, a case decided after *Collins I*, does not apply retroactively, and Collins would therefore have no constitutional error to litigate.

We analyze whether *Jackson* applies retroactively under a new approach recently articulated by the Supreme Court. Citing the inconsistency of retroactivity decisions under the old *Linkletter* standard[9] in

---

6. See *Collins I*, 728 F.2d at 1333, for a discussion of this statement.

7. Even if Collins' reliance on *Jackson* rather than *Edwards* could be characterized as a new ground for relief, and then held not to be an abuse of the writ, the claim would still fail on the merits because *Jackson* does not apply retroactively, *see* text *infra* at 1510–11.

8. As we discuss above, *see* text *supra* at 1505, Rule 9(b) requires that a successive petitioner raise a new or different legal claim, which requires more than just a new legal or factual argument in support of a previously raised claim. Such a legal or factual argument, however, may lead a court to hear the old claim again under the "ends of justice" doctrine.

9. In *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court con-

cases on collateral review, a plurality of the Supreme Court developed a new retroactivity analysis in *Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *see also Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (applying *Teague* analysis). Following Justice Harlan's approach, *see Mackey v. United States,* 401 U.S. 667, 675, 91 S.Ct. 1160, 1171, 28 L.Ed.2d 404 (1971) (seperate opinion of Harlan, J.); *Desist v. United States,* 394 U.S. 244, 256–57, 89 S.Ct. 1030, 1038, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting), the Court held that, unless a new constitutional rule of criminal procedure falls into one of two exceptions, the rule will not apply to cases that have become final before its announcement. *Teague,* —— U.S. at ——, 109 S.Ct. at 1075. Under the first exception, "a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.,* 109 S.Ct. at 1075 (quoting *Mackey,* 401 U.S. at 692, 91 S.Ct. at 1180 (separate opinion of Harlan, J.)). Under the second exception, a

rule should apply retroactively if it "requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty."'" *Id.,* 109 S.Ct. at 1075 (quoting *Mackey,* 401 U.S. at 693, 91 S.Ct. at 1180 (separate opinion of Harlan, J.) (quoting in turn *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (Cardozo, J.))). The *Teague* plurality proposed a modification of this exception, restricting it "to those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at ——, 109 S.Ct. at 1076–77.[10]

Applying the *Teague* analysis in the present case,[11] we first conclude that the rule announced in *Jackson* undoubtedly constitutes a "new rule." As the *Teague* Court explained,

> a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.... To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

Those direct review cases, however, did not address the specifics of Justice Harlan's exceptions to the rule of nonretroactivity. We cannot, therefore, read Justice White's concurrence as an endorsement of the plurality's adoption of Justice Harlan's general approach and certainly not as an endorsement of the proposed modification of Harlan's second exception.

Thus, six Justices concur in the general application of Justice Harlan's retroactivity analysis, but only four members of the Court support a restriction of Harlan's second exception. The Court, moreover, has yet to apply this second exception. Although the Court followed the *Teague* approach in *Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 2953, 106 L.Ed.2d 256 (1989), it considered the eighth amendment prohibition there at issue under the first exception to the rule of nonretroactivity.

**11.** We are bound to apply this analysis even though its result may be inconsistent with a decision by a prior panel of this court in *Fleming v. Kemp,* 837 F.2d 940, 947 (11th Cir.1988), *cert. denied sub nom. Fleming v. Zant,* —— U.S. ——, 109 S.Ct. 1764, 104 L.Ed.2d 200 (1989), which held, under the pre-*Teague* standard, that *Jackson* applies retroactively to cases on collateral review involving errors in the sentencing context.

---

sidered whether *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which made the exclusionary rule applicable to the states, should apply retroactively to cases on collateral review. In doing so, *Linkletter* applied a three-part standard that examined (1) the purpose of the rule at issue, (2) the states' reliance on the prior law, and (3) the effect that retroactive application of the rule would have on the administration of justice. 381 U.S. at 629, 85 S.Ct. at 1738.

**10.** In *Teague,* Chief Justice Rehnquist and Justices Scalia and Kennedy joined Justice O'Connor's opinion, which adopted Justice Harlan's approach to retroactivity but proposed a modification of Justice Harlan's second exception. —— U.S. at ——, 109 S.Ct. at 1075. Justices Stevens and Blackmun concurred in the plurality's adoption of Justice Harlan's approach, but they explicitly rejected the plurality's proposed modification of his second exception, especially in the context of capital cases. *Id.* at ——, 109 S.Ct. at 1080–81. Justice White concurred only in the result reached by the plurality, which he described as "an acceptable application in collateral proceedings of the theories embraced by the Court in cases dealing with direct review [such as *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985), and *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ].

**1512**

*Id.* at ——, 109 S.Ct. at 1070 (emphasis in original) (citations omitted); *see Penry,* —— U.S. at ——, 109 S.Ct. at 2944. In *Jackson,* the Court announced such a rule: it imposed a new obligation on police (not to initiate an interrogation after a defendant has asserted his right to counsel under the sixth amendment) and established a bright-line rule excluding police-initiated statements (a result not dictated by then existing precedent).

The rule in *Jackson,* however, will not apply retroactively to the present case unless it falls under one of the available exceptions. It falls under neither. The rule affords no constitutional protection to "primary, private individual conduct," *Teague,* —— U.S. at ——, 109 S.Ct. at 1075, as the first exception requires; it is not "implicit in the concept of ordered liberty," nor does its inapplicability seriously diminish the "likelihood of an accurate conviction," *id.* at ——, 109 S.Ct. at 1077, as required under either interpretation of the second exception. *See Jackson,* 475 U.S. at 638–40, 106 S.Ct. at 1412–13 (Rehnquist, J., dissenting) (*Jackson* involves "prophylactic rule" providing "second layer of protection"). We hold, therefore, that the rule in *Jackson* has no retroactive application to the present case.

Because *Jackson* does not apply retroactively, we conclude that the "ends of justice" do not compel consideration of Collins' *Jackson* claim.

### V.

For the foregoing reasons, we reject Collins' *Sandstrom* and *Jackson* claims under Rule 9(b). The district court's denial of relief is therefore

AFFIRMED.