885 F.2d 815
 19 Bankr.Ct.Dec. 1517
 In re Leo A. FURLONG, Jr., et al., Debtors.
Martha Joe FURLONG, Sally Amanda Allen, as Successor Trustee
of the Furlong Family Trust, James Furlong, Leo A.
Furlong, III, Devin J. Furlong and
Leslie K. Furlong Gunnels,
Plaintiffs-Appellants,
v.
Justin P. HAVEE, Trustee, Defendant-Appellee.
 No. 88-5598.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 10, 1989.
 
 Timothy J. Norris, Miami, Fla., for James, Leo, Devin and Leslie furlong.
 Robert C. Meyer, Miami, Fla., for plaintiffs-appellants.
 Todd DerOvanesian, Jr., Coral Gables, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, Chief Judge, and JOHNSON, Circuit Judge, and BROWN*, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 I.
 
 1
 In 1982, Leo A. Furlong, Jr. and his then wife, Martha Joe Furlong, declared bankruptcy. At the time of their declaration, Mrs. Furlong and her four children, James Furlong, Leo A. Furlong III, Devin J. Furlong, and Leslie K. Furlong Gunnels (the "Children"), were beneficiaries of a family trust (the "Family Trust"); she had an undivided twenty percent interest in the trust income and assets and the children held the remaining eighty percent interest. Mrs. Furlong never disclosed her interest in the trust to her trustee in bankruptcy; consequently, after her bankruptcy proceedings were completed and she was discharged, she continued to maintain and enjoy her trust interest as before.
 
 
 2
 When the trustee of her bankruptcy estate, Justin P. Havee, learned of Mrs. Furlong's undisclosed interest in the Family Trust, he petitioned the bankruptcy court to revoke her discharge in bankruptcy and, at the same time, commenced adversary proceedings to capture such interest for the benefit of her creditors. Havee named as defendants in those proceedings Mrs. Furlong, the trustee of the Family Trust--Sally Amanda Allen--and the Children. The defendants, represented by counsel, responded to Havee's complaint by filing an answer which stated that they were without knowledge as to the truth of his assertions and thus had the effect of a general denial. See Fed.R.Civ.P. 8(b).
 
 
 3
 Prior to trial, the parties negotiated a settlement. Their attorneys then reduced the agreement to writing, signed it for their clients, and presented it to the bankruptcy court for approval. The agreement provided that in consideration of Havee's release of his claim against Mrs. Furlong's interest in the Family Trust, Allen, as trustee of that trust, Mrs. Furlong, and the Children would give Havee a $100,000 promissory note, payable on or before November 15, 1984 with interest at the rate of ten percent per annum. The promissory note would be secured by a first mortgage on two lots[1] and a second mortgage on fifty-eight lots, all located in a resort development in North Carolina.[2] The court refused to approve the settlement, however, because one of Mrs. Furlong's major creditors objected to the timing of the payment to Havee and the interest rate he would receive.
 
 
 4
 The parties soon returned to the court with a new agreement. This agreement, which is not in the record, was apparently identical to the first one, except that the $100,000 promissory note was to bear interest at the rate of eleven percent rather than ten percent. On December 9, 1983, after hearing the creditors' objections to the agreement, the court approved it. The defendants thereafter gave Havee a $100,000 promissory note and mortgage, and he in turn released his claim to Mrs. Furlong's interest in the Family Trust.[3]
 
 
 5
 The promissory note was not paid according to its terms, and, on August 22, 1986, having received only $15,000 thereon, Havee moved the bankruptcy court to enter judgment against Allen, Mrs. Furlong, and the Children for the unpaid principal and interest due on the note. Havee served copies of his motion on their attorneys of record and they, in turn, filed responses. In their responses, counsel stated that the bankruptcy court lacked jurisdiction to grant the relief Havee sought because the court's order approving the parties' settlement had, in effect, dismissed the case. They also stated that they had not been in communication with their clients since December 9, 1983 when the settlement was consummated.
 
 
 6
 The bankruptcy court heard Havee's motion on September 16, 1986. Defense counsel appeared, reiterated what they had stated in their responses to Havee's motion, and advised the court that they had not been able to reach their clients. The court nonetheless proceeded to rule on the motion. First, it concluded that the case had not been dismissed on December 9, 1983, and that it therefore had jurisdiction to grant the relief Havee requested. The court then turned to the question of notice to the defendants. It held that those parties were present, in court, because their attorneys, who were still counsel of record, had received Havee's motion and notice of the hearing. Finding that the defendants had demonstrated no reason for withholding the relief Havee was seeking, the court entered judgment against them for the principal and interest due on the note. They appealed the court's decision to the district court, and that court affirmed.
 
 
 7
 Mrs. Furlong, Allen, and the Children (the appellants) ask us to reverse the district court's decision and to direct that the judgment against them be set aside on the ground that the bankruptcy court lacked jurisdiction to grant Havee relief. Alternatively, they ask us to direct the district court to remand the case to the bankruptcy court for a new hearing on Havee's motion, contending that the court denied them due process of law by not having the motion and notice of the hearing thereon served on their persons.
 
 II.
 A.
 
 8
 The record discloses that the bankruptcy court did not enter an order dismissing this case. Appellants contend nonetheless that the case was terminated. They advance two arguments. First, appellants argue that Havee dismissed the action pursuant to Fed.R.Civ.P. 41(a)(1)(ii), which provides that "an action may be dismissed by the plaintiff without order of court ... by filing a stipulation of dismissal signed by all parties who have appeared in the action." We are not persuaded. The parties neither signed a stipulation providing for the dismissal of the suit, nor represented to the court that they had settled their dispute and that Havee would no longer prosecute his claim. Had they made such a representation, we could say that the parties had satisfied the spirit of the rule and thus treat the case as having been terminated. See Oswalt v. Scripto, Inc., 616 F.2d 191, 194-95 (5th Cir.1980).[4] But see United States v. Transocean Air Lines, Inc., 356 F.2d 702, 705 (5th Cir.1966) (dismissal can be effected only when stipulation of dismissal filed by all parties).
 
 
 9
 Appellants' second, and alternative, argument is that the bankruptcy court's order approving the proposed settlement operated to dismiss the case.[5] To the extent that appellants' argument is rooted in the language of the order, their argument must fail; the order states that the "settlement of this matter ... is hereby approved," but contains no language indicating that the case was being dismissed. The same is true with respect to the parties' settlement agreement. The agreement states that Havee, "[u]pon receipt of satisfactory security for the aforementioned payment [of $100,000], and approval of this settlement by the Bankruptcy Court will dismiss, without prejudice, the instant adversary proceeding." This language makes it clear that the court's order approving the settlement would not end the matter; it remained for Havee to dismiss the case.[6] In sum, the court's December 9, 1983 order did not operate to dismiss the case. Accordingly, the court had jurisdiction to entertain Havee's motion for the entry of judgment against the appellants.
 
 B.
 
 10
 Appellants contend that the bankruptcy court denied them due process of law when it proceeded with the hearing on Havee's motion for judgment without giving them notice. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). We find no such denial. Since the case had not been dismissed and appellants still had counsel of record, notice to counsel afforded appellants all the due process they were due. See Fed.R.Civ.P. 5(b) ("Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney....").
 
 
 11
 Appellants, however, are not without recourse. Even where there is no denial of due process,
 
 
 12
 [j]udicial supervision of the administration of. . .justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards ... which are summarized as "due process of law...."
 
 
 13
 McNabb v. United States, 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943); see also United States v. Hasting, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). Although we usually exercise our supervisory power in the management of the criminal docket, see generally Note, Mechanikal Applications of the Harmless Error Rule in Cases of Prosecutorial Grand Jury Misconduct, 1988 Duke L.J. 1242, 1264-67 (discussing the use of supervisory power in criminal cases), we have exercised it in managing the civil docket, see, e.g., Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (citizenship may not be revoked by default judgment); Piambino v. Bailey, 757 F.2d 1112, 1145-46 (11th Cir.1985). The supervisory power authorizes us to require a lower court to "follow procedures deemed desirable from the viewpoint of sound judicial practice although in no-wise commanded by statute or by the Constitution." Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). We exercise this power sparingly, though, depending on the specific circumstances at hand, see Marshall v. United States, 360 U.S. 310, 312, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959).
 
 
 14
 We believe that our supervisory power should be invoked in this case. As noted, when the hearing on Havee's motion for judgment began, defense counsel informed the court that they had not been in communication with their clients in over two and one-half years and thus could not effectively speak for them. Both attorneys stated at the hearing on Havee's motion for final judgment that they did not know where their clients resided or whether they received the notices sent by the attorneys regarding the motion for final judgment. In short, they did not know whether their clients had a bona fide defense to Havee's motion. Balancing the harm a new hearing would cause Havee against the prejudice appellants might suffer,[7] we have no difficulty in requiring a new hearing.
 
 
 15
 By exercising our supervisory power in this case, we do not sanction the use of this power to weaken the district courts' authority to act when attorneys of record have been properly served with pleadings and motions, see Fed.R.Civ.P. 5(b). In the vast majority of cases, service of a motion for final judgment on the attorney of record will be valid against the client as well. This case, however, presents "exceptional circumstances," see La Buy v. Hawes Leather Co., 352 U.S. 249, 259-60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), that could result in substantial prejudice to the defendants if the district court's actions are tested only by the minimum requirements of due process. We therefore reverse the judgment of the district court and remand for further proceedings as directed in this opinion.
 
 
 16
 REVERSED and REMANDED with instructions.
 
 
 17
 JOHN R. BROWN, Senior Circuit Judge, concurring:
 
 
 18
 I concur fully in the result and Judge Tjoflat's opinion. I stress that of extreme importance are the rights of the minor children who alone are the beneficiaries of 80% of the family trust. On the face of the order issued by the bankruptcy court, affirmed by the district court, the children are judgment debtors for the unpaid principal and interest on the promissory note. How or why the children have any liability is a complete mystery. How or why their trust interest was ever exposed to the bankruptcy trustee's claim of liability is equally mysterious. Added to this is the quandry as to the right (power) of the father-mother to bargain away their rights in a bankruptcy proceeding to which neither they, nor their assets (80% trust interest) was a party.
 
 
 
 *
 Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 There is some confusion in the record as to whether the mortgage on these two lots was to be a first or second mortgage. The settlement agreement represents the mortgage as a first mortgage, but Havee's attorney, at the hearing on his motion for final judgment on August 22, 1986, see text infra at 3, claimed that it was a second mortgage
 
 
 [2]
 Apparently, the note was to be paid by The Florida Real Estate Sales Corporation and Holly Springs Golf and Country Club, Limited, two entities controlled by Leo Furlong, Jr. Florida Real Estate and Holly Springs were to buy out Mrs. Furlong's interest in the Family Trust for $100,000, delivering the purchase price directly to Havee in satisfaction of the note. The parties intended the payments to come from mortgaging the 60 lots in North Carolina which were owned by Florida Real Estate and Holly Springs. The fact that the prior mortgages on these lots were greater than the fair market value of the lots explains why Havee did not merely proceed against the note's security when he moved the bankruptcy court for entry of final judgment on the note. See text infra at 3
 
 
 [3]
 Although these events are not established by the record, we nonetheless assume that these events took place. We do so because, as is indicated in the text infra, the bankruptcy court subsequently entered judgment against the defendants for the unpaid portion of the note. Also, the demand letters sent by Havee's attorney to the attorneys for Mrs. Furlong, the Children, and Sally Amanda Allen indicate the existence of a promissory note signed by all of the defendants in the adversary proceeding
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [5]
 The order reads as follows:
 THIS MATTER having come before the Court on Thursday, December 8, 1983, at 9:30 a.m., upon the Court's Order To Show Cause Why Proposed Settlement Should Not Be Approved, whereby the trustee seeks to settle an adversary proceeding for the sum of $100,000.00, this Court having heard the argument of counsel, no adverse interest having been represented and the Court being otherwise fully advised in the premises, it is hereby
 ORDERED, ADJUDED [sic], and DECREED that settlement of this matter, be and the same, is hereby approved.
 
 
 [6]
 Appellants' argument that the case had been dismissed because the clerk of the bankruptcy court closed the case is frivolous. As the district court correctly pointed out, the clerk's closing of a case is purely an administrative action and cannot be taken as evidence of the dismissal of a suit
 
 
 [7]
 We consider, in particular, the prejudice to the Children, who were not responsible for their mother's failure to disclose her interest in the Family Trust and thus could not have been held liable to Havee had his claim against Mrs. Furlong's trust interest proceeded to trial