**Raymond Robert CLARK, Petitioner–Appellant,**

v.

**Richard L. DUGGER, Secretary, Department of Corrections, State of Florida, Respondent–Appellee.**

No. 89–3065.

United States Court of Appeals, Eleventh Circuit.

May 3, 1990.

As Amended June 7, 1990.

Billy H. Nolas, Office of Capital Collateral Representative, Martin J. McClain, Tallahassee, Fla., for petitioner-appellant.

Robert Krauss, Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before TJOFLAT, Chief Judge, and VANCE * and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Raymond Clark is before this court appealing the district court's denial of his second federal petition for a writ of habeas corpus. Because we conclude that his claim, premised on *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985),[1] is procedurally barred, we affirm the district court's denial of relief.

## BACKGROUND

A Florida jury convicted Clark of first degree murder, kidnapping, and extortion, the facts of which are set forth in our previous decision, *Clark v. Dugger*, 834 F.2d 1561 (11th Cir.1987). He was sentenced to death, and the Florida Supreme Court affirmed his conviction and sentence on direct appeal, *Clark v. State*, 379 So.2d 97 (Fla.1979); the United States Supreme Court denied certiorari. *Clark v. Florida*, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed.2d 371 (1981). Clark filed two motions for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, both of which were denied by the trial court. The Florida

---

* Judge Robert S. Vance was a member of the panel which heard oral argument but due to his death on December 16, 1989 did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

1. *Caldwell* arose out of the Mississippi death penalty scheme, and the Supreme Court held that the Constitution prohibited diminishing the jurors' sense of responsibility by instructing them that the sentence would be subject to appellate review, thus permitting the jurors to shift responsibility to the appellate court. Clark contends that the trial court violated *Caldwell* by failing adequately to inform the jury of the weight that would be accorded its advisory verdict.

Supreme Court affirmed. *Clark v. State*, 460 So.2d 886 (Fla.1984); *Clark v. State*, 467 So.2d 699 (Fla.1985). Clark's first federal habeas petition was denied by the district court, and this court affirmed. *Clark v. Dugger*, 834 F.2d 1561 (11th Cir.1987). Although on that appeal Clark argued that his death sentence was obtained in violation of *Caldwell v. Mississippi*, we declined to reach that claim as the petitioner had not presented it to the district court. Clark returned to the Florida trial court with a third 3.850 motion raising ten claims for relief, including a *Caldwell* claim, but the trial court denied his motion for relief, ruling that Clark's *Caldwell* claim was procedurally barred. The Florida Supreme Court affirmed, holding that Clark's *Caldwell* claim was procedurally barred. *Clark v. State*, 533 So.2d 1144 (Fla.1988).

Clark filed his second federal petition for habeas corpus, raising inter alia his *Caldwell* claim. The district court denied relief on all claims. As to the *Caldwell* claim, the court held it constituted an abuse of the writ, and, in the alternative, that it was without merit. The district court declined to issue a certificate of probable cause ("CPC"), but this court issued CPC limited to the *Caldwell* claim. Although Clark was denied relief by the district court on his other claims, he was not granted CPC for those claims, and he cannot, therefore, litigate them on appeal. *Barefoot v. Estelle*, 463 U.S. 880, 892–93, 103 S.Ct. 3383, 3394–95 and nn. 3 & 4, 77 L.Ed.2d 1090 (1983) ("Congress inserted the requirement that a prisoner first obtain a certificate of probable cause to appeal before being entitled to do so.").

## RETROACTIVITY AND ABUSE OF THE WRIT

■ Although the district court denied Clark's *Caldwell* claim as an abuse of the writ, the state has not raised abuse of the writ in its appellate brief, and therefore it is deemed abandoned. *Lusk v. Dugger*, 890 F.2d 332, 335 n. 2 (11th Cir.1989) (claim not raised in appellate brief "considered abandoned"); *Ballard v. Johnson*, 821 F.2d 568, 569 n. 1 (11th Cir.1987) (same). At oral argument, Florida, although stating in response to questions from the court that abuse of the writ had been raised in the district court, chose to rely on state procedural bar. Where a party has abandoned a claim on appeal, we need not address it. *Moore v. Zant*, 885 F.2d 1497, 1501 n. 4 (11th Cir.1989) (en banc) (plurality) ("We deem those claims not advanced on appeal abandoned."). Especially where the state chooses not to rely on abuse of the writ, an appellate court should not raise the bar as the Supreme Court has declared emphatically that the burden is on the government to plead abuse of the writ with clarity and particularity. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963); *Price v. Johnston*, 334 U.S. 266, 291, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948).

In *Moore v. Zant*, 885 F.2d 1497, a majority of the court expressed the view that in reviewing a claim presented in a second federal habeas petition, the court must address first whether the claim presented by the petitioner constitutes an abuse of the writ; only then could the court consider the availability of the claim under the retroactivity doctrine delineated by the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Because the state does not rely on abuse of the writ, we need not decide whether the splintered en banc precedent set by this court in *Moore v. Zant* can survive the Supreme Court's recent decision in *Saffle v. Parks*, —— U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), where the Court addressed retroactivity at the outset of its analysis.[2]

---

**2.** In *Teague*, Justice O'Connor clearly stated that "[r]etroactivity is properly treated as a *threshold question*, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." 489 U.S. at ——, 109 S.Ct. at 1069–70 (emphasis added). In *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Court stated that "[b]ecause Penry is before us on collateral review, we must determine, as a *threshold matter*, whether granting him the relief he seeks would create a 'new rule'." —— U.S. at ——, 109 S.Ct. at 2944 (citing *Teague* )

Clark's conviction became final in 1981 when the Supreme Court declined to grant certiorari to review Clark's conviction and direct appeals through the Florida courts, and we must decide whether Clark is entitled to the retroactive benefit of *Caldwell v. Mississippi*, which was decided in 1985. In *Teague, Penry*, — U.S. —, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), *Butler v. McKellar*, — U.S. —, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), and *Parks*, the Supreme Court has delineated the retroactivity doctrine which we are bound to follow. Where a new constitutional rule is enunciated after a petitioner's conviction has become final, the petitioner may not obtain the benefit of that rule unless it falls within one of two exceptions to the general retroactivity bar. *Teague*, 489 U.S. at —, 109 S.Ct. at 1075; *Butler*, — U.S. at —, 110 S.Ct. at 1215–19; *Parks*, — U.S. at —, 110 S.Ct. at 1259–65. *See also Penry*, — U.S. at —, 109 S.Ct. at 2944–47 (1989) (*Teague* new rule analysis applied). If the new rule places certain conduct "beyond the power of the criminal law-making authority to proscribe," *Butler*, — U.S. at —, 110 S.Ct. at 1218 (quoting *Teague* 489 U.S. at —, 109 S.Ct. at 1075 (quoting *Mackey v. U.S.*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J. concurring in judgment in part and dissenting in part))), or the new rule requires "the observance of 'those procedures that ... are "implicit in the concept of ordered liberty ...," ' " *id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)), then the rule may be applied on collateral review. In *Butler* a majority of the court restricted the retroactive application of new rules falling under the second exception to those "new procedures without which the likelihood of an accurate conviction is seriously diminished." — U.S. at —, 110 S.Ct. at 1218 (quoting *Teague*, 489 U.S. at —, 109 S.Ct. at 1076–77).

As *Caldwell* was decided after Clark's conviction became final, we must decide whether *Caldwell* constitutes a "new rule" under the Court's retroactivity analysis. In *Butler*, the Court, referring to *Penry* and *Teague*, emphasized that a case produces a new rule "when it breaks new ground or imposes a new obligation on the States or the Federal Government." — U.S. at —, 110 S.Ct. at 1216 (citing *Penry*, — U.S. —, 109 S.Ct. 2934). Furthermore, unless the rule was "*dictated*" by precedent at the time the defendant's conviction became final, the defendant may not obtain the benefit of a rule announced in a subsequent case. *Butler*, — U.S. at —, 110 S.Ct. at 1216 (quoting· *Penry*, 492 U.S. at —, 109 S.Ct. at 2944 (quoting *Teague*, 489 U.S. at —, 109 S.Ct. at 1070)) (emphasis in original). Underscoring concerns of comity and federalism, the *Butler* majority warned against disturbing the decisions of state courts when those courts made "reasonable, good-faith interpretations of existing precedents ... even though they are shown to be contrary to later decisions." — U.S. at —, 110 S.Ct. at 1217.

In determining whether or not a *Caldwell* claim was dictated by precedent we are not writing on an entirely clean slate. Previously, albeit in the context of "cause" for procedural bar, this court determined that prior to the Supreme Court's decision in *Caldwell*, a *Caldwell* claim (premised on federal law) was so novel that "its legal basis was not reasonably available at that time." *Adams v. Dugger*, 816 F.2d 1493, 1498 (11th Cir.1987) *rev'd*, 489· U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). Although *Adams v. Dugger* was reversed by the Supreme Court, the Court did not rule on this court's historical analysis concerning the availability of the *Caldwell* claim, but rested its decision instead on the existence of an independent and adequate state procedural bar. We believe this court's opinion in *Adams v. Dugger* was correct in

(emphasis added). Despite that language, this circuit declined to address retroactivity as a "threshold matter." The United States Supreme Court recently has reiterated its view that retroactivity analysis comes first in its review of

collateral cases. *Parks*, — U.S. at —, 110 S.Ct. at 1259 (1990). The instant case does not require us to decide this procedural issue as abuse of the writ is not before us.

concluding that a *Caldwell* claim was not reasonably available, given the state of the law, prior to the Supreme Court decision in *Caldwell.*

Accordingly, where the *Caldwell* claim was so novel that it was unavailable to a defendant, it follows that prior precedent did not "dictate" the rule of *Caldwell,* the essence of which is that the eighth amendment requires that the jury be properly informed of its sentencing responsibilities. Although there were numerous existing authorities for the proposition that the eighth amendment requires heightened reliability for death penalty cases, as discussed in *Caldwell* itself, the rule announced in *Caldwell* was not "dictated" by pre-existing precedent. *Cf. Butler,* —— U.S. at ——, 110 S.Ct. at 1217 (noting that "dictated" may require more than "controlled" or within the "logical compass"; suggesting that rule debatable among reasonable minds is not "dictated" for new rule retroactivity purposes). Thus, it constitutes a new rule.

As *Caldwell* constitutes a "new rule" for retroactivity purposes, we must decide whether it falls into either of the two exceptions to the retroactivity bar. Obviously, *Caldwell* does not fall within the first exception, which concerns a shifted boundary of criminal conduct. The second exception provides that a new rule will be applied retroactively if it is "implicit in the concept of ordered liberty" and "without which the likelihood of an accurate conviction is seriously diminished." *Butler,* —— U.S. at ——, 110 S.Ct. at 1218 (quoting *Teague,* 489 U.S. at ——, 109 S.Ct. at 1077). The text of *Caldwell* itself mandates that the rule it announces fall within the second exception.[3]

In *Caldwell* the Court condemned the bias and lack of reliability that result "when there are state-induced suggestions that the sentencing jury may shift its sense of responsibility to an appellate court." 472 U.S. at 330, 105 S.Ct. at 2640. Providing for a reliable and bias-free imposition of a sentence of death surely must be implicit in the "concept of ordered liberty." The meaning of "an accurate conviction" is problematic in the sentencing context, but we believe that the "accuracy" of the imposition of the death sentence requires, as Supreme Court precedents demand, that the jury be properly instructed on its role so that the death sentence is reliably imposed in a setting free from bias and confusion. *See Caldwell,* 472 U.S. at 330, 105 S.Ct. at 2640.

The hazard of an improperly instructed jury, the Court in *Caldwell* emphasized, is that the death penalty could be imposed "although no sentencer had ever made a determination that death was the appropriate sentence." 472 U.S. at 332, 105 S.Ct. at 2641. The jury, if it believed that the final responsibility for imposing the death penalty lay with the trial or appellate court, would be more likely to impose a death sentence in order "to 'send a message' of extreme disapproval" even though the jury did not believe the death sentence was the appropriate punishment. *Id.* The jury's concerns would be allayed by reassurances that it could "more freely 'err because the error may be corrected on appeal.'" *Id.* (quoting *Maggio v. Williams,* 464 U.S. 46, 54–55, 104 S.Ct. 311, 316, 78 L.Ed.2d 43 (1983) (Justice Stevens concurring)). Furthermore, the Court discerned that jurors

are given only partial guidance as to how their judgment should be exercised, leaving them with substantial discretion. Given such a situation, the uncorrected suggestion that the responsibility for any ultimate determination of death will rest with others presents an intolerable dan-

---

**3.** The Tenth Circuit also has concluded that a *Caldwell* error falls within the second exception to the retroactivity bar. *Hopkinson v. Shillinger,* 888 F.2d 1286, 1292 (10th Cir.1989) (en banc) ("*Caldwell* claims fall within the second exception in *Teague,* regardless of how the exception may finally be defined"), *petition for cert. filed,* No. 89–6509 (Jan. 16, 1990). The Fifth Circuit, however, has held that *Caldwell,* although a new

rule, does not satisfy either *Teague* exception. *Sawyer v. Butler,* 881 F.2d 1273, 1294 (5th Cir. 1989) (en banc) (holding that *Caldwell* does not fall within second *Teague* exception, but glossing exception as factual innocence), *cert. granted,* —— U.S. ——, 110 S.Ct. 835, 107 L.Ed.2d 830 (1990); *Hill v. Black,* 887 F.2d 513, 518 (5th Cir.1989), *opinion supplemented on other grounds,* 891 F.2d 89.

ger that the jury will in fact choose to minimize the importance of its role. Indeed, one can easily imagine that in a case in which the jury is divided on the proper sentence, the presence of appellate review could effectively be used as an argument for why those jurors who are reluctant to invoke the death sentence should nevertheless give in.

472 U.S. at 333, 105 S.Ct. at 2641–42.

The Court views the *Caldwell* issue as the "principal concern" of its death penalty jurisprudence because it implicates the "procedure by which the State imposes the death sentence." *Caldwell*, 472 U.S. at 340, 105 S.Ct. at 2645 (quoting *California v. Ramos*, 463 U.S. 992, 999, 103 S.Ct. 3446, 3451, 77 L.Ed.2d 1171 (1983)). Because a *Caldwell* error seriously corrupts and diminishes the accuracy of the imposition of the death sentence, we hold that the "new rule" of *Caldwell* should apply retroactively to Clark.

## PROCEDURAL BAR

■ Having established that the legal rule of *Caldwell* is applicable to Clark, we must now consider whether his claim is, as the state contends, procedurally barred. The Florida Supreme Court denied relief on Clark's *Caldwell* claim in reliance on procedural bar, affirming the lower court's invocation of *Copeland v. Wainwright*, 505 So.2d 425 (Fla.) (failure to object at trial bars subsequent litigation of issue), *cert. granted, and judgment vacated on other grounds*, 484 U.S. 807, 108 S.Ct. 55, 98 L.Ed.2d 19 (1987). The district court, holding the claim to be an abuse of the writ and, alternatively, to be meritless, did not rule on procedural bar. We, however, conclude that Clark's failure to object at trial on state law grounds provides an "adequate and independent" state procedural bar upon which the state supreme court, in a plain statement, relied, and that he is therefore procedurally barred. *Cf. Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (plain statement); *Michigan v. Long*, 463 U.S. 1032, 1042 and n. 7, 103 S.Ct. 3469, 3477 and n. 7, 77 L.Ed.2d 1201 (1983).

■ A petitioner may not raise a claim in federal collateral proceedings if the claim is barred by "adequate and independent" state grounds. A defendant's failure to object at trial based on state law grounds bars further litigation of the issue in Florida. *Copeland*, 505 So.2d at 427. Because the defendant failed to call the alleged state law error to the attention of the state court and thus permit that court to rectify the perceived error, the defendant may not subsequently complain in federal court of a federal constitutional violation that would have been averted had the defendant asserted his state law rights. Moreover, the fact that the trial error relating to state law may also provide a basis of a federal claim does not provide an independent basis for federal review, as the petitioner could have received redress in the state trial court had the petitioner simply followed the state's procedural rule and objected at trial. *See Dugger v. Adams*, 489 U.S. 401, ——, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989); *see also Bertolotti v. Dugger*, 883 F.2d 1503, 1520 (11th Cir.1989); *Tafero v. Digger*, 873 F.2d 249, 251 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1834, 108 L.Ed.2d 962 (1990).

On this appeal, Clark argues that the state procedural bar enunciated by the Florida Supreme Court is not "independent" because it is intertwined with issues of federal law. In short, Clark alleges that the availability of a *Caldwell* claim in Florida collateral proceedings turns on the Florida court's interpretation of *Caldwell*, which is an issue of federal law. We need not address the merits of Clark's argument as we conclude that the procedural bar asserted by the Florida Supreme Court was not intertwined with its interpretation of federal law, but rather was based on Clark's failure to object at trial to what he perceived to be the misinstruction of the jury on its sentencing responsibilities, an objection that was available at the time based on state law. *Bertolotti*, 883 F.2d at 1520; *Tafero*, 873 F.2d at 251.

The Florida circuit court denied relief on the *Caldwell* claim, holding that it was "compelled to follow the rulings of the

Florida Supreme Court with respect to a procedurally barred *Caldwell* claim, to-wit: *Copeland v. Wainwright.*" *Clark v. Florida*, No. CRC77–2942CFA50, slip op. at 1 (Apr. 25, 1988) (citation omitted). The Florida Supreme Court, in considering Clark's appeal from the circuit court's denial of relief, stated that it "agree[d] with the trial court that most of these claims [including the *Caldwell* claim] could have been, should have been, or were raised previously. They are, therefore, procedurally barred from consideration in this ... motion for postconviction relief." 533 So.2d at 1145 (footnote omitted). Although the Florida Supreme Court did not cite to *Copeland* to support its assertion of procedural bar, we believe that the decision satisfies the plain statement rule. We cannot escape the conclusion that the Florida Supreme Court's statement that it agreed with the trial court, which held Clark's *Caldwell* claim barred on the basis of *Copeland* and the failure to object at trial, constitutes an adequate and independent state procedural bar.[4]

█ Although we hold the *Caldwell* claim procedurally barred, our analysis is not at an end. A petitioner may overcome procedural bar by demonstrating cause and prejudice for the procedural default. In this case, given the existence of state law grounds to object at trial, Clark cannot make a showing of cause as both the claim and the tools to effectuate his objection were then available. *See Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *Murray v. Carrier*, 477 U.S. 478, 489–91, 106 S.Ct. 2639, 2646–47, 91 L.Ed.2d 397 (1986). Nevertheless, as explained in *Murray*, the Court recognizes that

the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' ... Accordingly, we think that in

an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

*Murray*, 477 U.S. at 495–96, 106 S.Ct. at 2649.

As there is some difficulty translating the concept of an "accurate conviction" into the context of an "accurate sentence," so too the transliteration of actual innocence into the sentencing realm requires close reading. In *Dugger v. Adams*, the Court discussed the meaning of a "fundamental miscarriage of justice" in the context of a *Caldwell* error. *Dugger v. Adams*, 489 U.S. at ——, 109 S.Ct. at 1217 n. 6. Although the Court declined to "define what it means to be 'actually innocent' of a death sentence," the Court emphasized that such a case must be an "extraordinary one." *Id.* Further, the Court declared that "[d]emonstrating that an error is by its nature the kind of error that might have affected the accuracy of a death sentence is far from demonstrating that an individual defendant probably is 'actually innocent' of the sentence he or she received." *Id.* A constitutional violation is a necessary prerequisite to an extraordinary case. *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649. Indeed, the concept of the extraordinary case contemplates at least some examination of the merits of the petitioner's claim, unless his allegations fail to cross the threshold which, if proven, would demonstrate the existence of "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent...." *Id.* Nevertheless, the Court has indicated that it rejects "the suggestion that there is anything 'fundamentally unfair' about enforcing procedural default rules in cases devoid of any substantial

---

**4.** At oral argument, Clark suggested that Justice Barkett's dissenting opinion, 533 So.2d at 1146, indicated that the procedural bar relied upon by the Florida Supreme Court was not the simple *Copeland* bar. We disagree. Justice Barkett acknowledged that Florida jurisprudence supported the rejection of Clark's *Caldwell* claim, but she thought the case controlled by *Mann v.*

*Dugger*, 844 F.2d 1446 (11th Cir.1988), and believed that the Florida Supreme Court should await the decision of the United States Supreme Court in *Dugger v. Adams*. The concerns of a dissenting justice do not, however, control the meaning of a majority opinion, and we accept the plain meaning expressed by the majority of the Florida Supreme Court in its decision.

*claim* that the alleged error undermined the *accuracy* of the guilt or *sentencing determination.*" 477 U.S. at 539, 106 S.Ct. at 2668 (emphasis added).

Although *Murray v. Carrier* may be read to suggest that procedural bar will be overlooked where the alleged error undermined the accuracy of the sentencing determination, our application of that principle in this case is foreclosed by the majority opinion in *Dugger v. Adams* where the Court, elucidating actual innocence of a death sentence in the context of a *Caldwell* claim arising out of a Florida case, stated "that the fact that the trial judge ... found an equal number of aggravating and mitigating circumstances is not sufficient to show that an alleged error in instructing the jury on sentencing resulted in a fundamental miscarriage of justice." 489 U.S. at ——, 109 S.Ct. at 1218 n. 6. In the instant case, the aggravating and mitigating circumstances were not in equipoise, but to the contrary the trial judge found no mitigating circumstances at all. Although the Florida Supreme Court struck two of the aggravating circumstances found by the trial judge because the aggravating circumstances had been "doubl[ed]-up," nonetheless the court concluded that "[e]ven with the elimination of the doubling-up of aggravating circumstances, there remain several aggravating circumstances to support the imposition of the death penalty. We find the death sentence to be warranted by the circumstances of this case." *Clark v. State,* 379 So.2d at 104. *Cf. Clemons v. Mississippi,* —— U.S. ——, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) (even in weighing state, appellate court may balance aggravating and mitigating factors on appeal to uphold death sentence despite invalidation of one of aggravating circumstances considered by the jury). Although were we writing on a clean slate, we might find the accuracy-diminishing harm of a *Caldwell* violation to require further examination to determine whether or not the error had wrought a fundamental miscarriage of justice, we are bound by the Supreme Court's decision in *Adams.* Accordingly, we hold that Clark cannot surmount the state procedural bar that precludes him from asserting his *Caldwell* claim in federal collateral proceedings. The decision of the district court denying relief is, therefore, AFFIRMED.