**Ricardo ELORTEGUI, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**No. 88-2435-CIV-NESBITT.**

United States District Court,
S.D. Florida.

June 25, 1990.

Bruce Rogow, Miami, Fla., for petitioner.

U.S. Atty's. Office, for defendant.

## MEMORANDUM OPINION

NESBITT, District Judge.

This case presents the novel question of whether the Eleventh Circuit's decision in *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir.1989), permitting the limited admission of polygraph evidence at trial, should retroactively apply to actions brought under 28 U.S.C. § 2255, the "habeas" provision for federal prisoners.

## I. BACKGROUND

On September 2, 1986, Ricardo Elortegui was convicted of two criminal counts under 21 U.S.C. §§ 841(a) and 846: 1) conspiracy to possess cocaine with the intent to distribute, and 2) possession of cocaine with the intent to distribute. Elortegui appealed his conviction to the United States Court of Appeals for the Eleventh Circuit. The Court of Appeals affirmed the decision of this Court, and the Supreme Court denied

certiorari on December 14, 1987. Elortegui then brought this motion to vacate his conviction pursuant to 28 U.S.C. § 2255.

At all appropriate stages of the trial, Elortegui filed motions to conduct an evidentiary hearing pursuant to Rule 702 of the Federal Rules of Evidence to determine the admissibility of polygraph examinations. According to the defense, the polygraph tests corroborated both Elortegui's testimony concerning his lack of participation in the cocaine transaction and the testimony of four of Elortegui's alibi witnesses.[1] This Court denied the motions based on the Eleventh Circuit *per se* rule barring the admission of polygraph evidence, which was undisputedly the relevant law at the time of the trial. On direct appeal, Elortegui again raised the issue of whether a hearing should be held on the admissibility of the polygraph tests.

Elortegui, *pro se*, filed his motion to vacate pursuant to 28 U.S.C. § 2255 on September 2, 1989. On September 28, 1989, the Court of Appeals for the Eleventh Circuit, *en banc*, decided *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir.1989), revisiting the issue of the admissibility of polygraph evidence at trial and revising the prior rule. On October 27, 1989, Petitioner, through counsel, supplemented his motion to vacate based on *Piccinonna*. Petitioner argues in his supplemental petition that this Court should consider, in light of the "new law," whether the proffered polygraph evidence is admissible. The Court addresses below only Elortegui's supplemental claim regarding the retroactive application of *Piccinonna* pursuant to 28 U.S.C. § 2255.

## II. DISCUSSION

### A. *The Piccinonna Decision*

In *Piccinonna*, the Court of Appeals reconsidered its approach to the admission of polygraph evidence at trial, "[i]n the wake of new empirical evidence and scholarly opinion which have undercut many of the traditional arguments against the admission of polygraph evidence...." 885 F.2d at 1533. The court noted that, with respect to polygraph examinations, the circuits fall into roughly three categories: jurisdictions that hold polygraph evidence inadmissible *per se*, jurisdictions that allow the admission of polygraph evidence when the parties stipulate to the admissibility of the evidence prior to the administration of the test, and jurisdictions which leave the issue within the sound discretion of the trial judge. *Id.* at 1533–34. The majority of circuits belonged to the latter two groups. Quoting Justice Potter Stewart, the Eleventh Circuit joined the majority, reversed prior decisions, and held polygraph evidence admissible under two circumstances, because " 'any rule that impedes the discovery of truth in a court of law impedes as well the doing of justice.' " *Id.* at 1535 (quoting *Hawkins v. United States*, 358 U.S. 74, 81, 79 S.Ct. 136, 140, 3 L.Ed.2d 125 (1958)).

After *Piccinonna*, polygraph evidence must be admitted in two instances. First, the court must admit polygraph tests into evidence when the parties stipulate prior to the administration of the examination "as to the circumstances of the test and as to the scope of its admissibility." 885 F.2d at 1536. Second, the court must admit the evidence when it is used to corroborate or impeach a witness's testimony at trial, provided that three preliminary conditions are met: the party that introduces polygraph evidence must provide his adversary with adequate notice that the testimony will be introduced; the opposing party must have a reasonable opportunity to administer a substantially similar test using its own expert; and finally, the expert's testimony is still subject to the Federal Rules of Evidence, such as Rule 608.

The polygraph evidence proffered by Elortegui would have been admissible under the second *Piccinonna* exception.[2]

---

1. Only three of the four alibi witnesses testified at trial. Before any witnesses had undergone testing, Defendants offered the government the opportunity to take the polygraph examination of the many alibi witnesses for both Elortegui and his co-defendant.

2. On remand from the Eleventh Circuit, the District Court noted that "Mr. Piccinonna could

First, the polygraph evidence would have corroborated Elortegui's and other witnesses' testimony. Second, the government had notice of Elortegui's intention to introduce the polygraph tests. Third, the government was invited by the defendant to administer polygraph tests. Fourth, the tests would appear to be otherwise admissible under the Federal Rules of Evidence,[3] although it would be within the trial court's discretion to exclude them under Rule 403.[4] Nevertheless, despite the apparent relevance of *Piccinonna* to the Petitioner's

not be expected to have adhered to the new procedures established in the opinion [by the Eleventh Circuit] (such as notice or reasonable opportunity for the opposing party to test the defendant) since these matters were not the law in 1985." *United States v. Piccinonna,* 729 F.Supp. 1336 (S.D.Fla.1990). Similarly, in this case, it cannot be expected that Mr. Elortegui would comply with the conditions enumerated in *Piccinonna* at his trial, which was conducted before the Eleventh Circuit handed down its decision. Under such circumstances, it seems obvious that petitioner will be held to a less stringent standard with regard to meeting the conditions for admissibility. Thus, even if Petitioner had not complied with every condition set forth in *Piccinonna,* the polygraph tests would not necessarily be inadmissible for that reason.

3. In *United States v. Piccinonna,* 729 F.Supp. 1336 (S.D.Fla.1990), on remand from the Eleventh Circuit, the District Court raises some doubts whether polygraph evidence is ever admissible at trial, even after *Piccinonna.* The District Court reasoned that

1) "A criminal defendant will only offer polygraph evidence as evidence if it shows he is not lying. In such a case, the government would not be expected to stipulate to its use...." and

2) "Even when used for impeachment or corroboration, however, the polygraph results would still not be admissible," because their admission cannot be reconciled with Federal Rule of Evidence 608.

*Id.* at 1337–1338.

Contrary to that District Court's suggestion, this Court believes that there are circumstances in which polygraph evidence is admissible. Implicit in the Eleventh Circuit's analysis is that the parties must stipulate to admissibility *prior* to the administration of the test. *See Polygraph Evidence in Federal Criminal Trials After United States v. Piccinonna,* 64 Florida Bar Journal, 49–52 (1990). Thus, the Court's analysis is inapposite with regard to the first point, because the parties will have stipulated to the admission of polygraph evidence before they know the results of the examination.

motion, the Court may be prohibited from applying *Piccinonna* retroactively in this collateral challenge to Petitioner's conviction.

B. *The Retroactive Application of Piccinonna*

In *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court redefined the circumstances in which new criminal laws should apply retroactively to final decisions on collateral review. The Court held[5] that "[f]irst, a

As to the second point, the District Court correctly points out that polygraph evidence is categorically inadmissible under Rule 608(a), because polygraphs are evidence of specific conduct rather than character. The court, however, mistakenly concludes that polygraph evidence is also always inadmissible under Rule 608(b), which prohibits extrinsic evidence of specific conduct. In reaching this conclusion, the court ignores the exception to Rule 608(b). The exception provides that " 'extrinsic evidence which contradicts the *material* testimony of a prior witness is admissible.' " *United States v. Calle,* 822 F.2d 1016, 1021 (11th Cir.1987) (quoting *United States v. Russell,* 717 F.2d 518, 520 (11th Cir.1983) (emphasis in original)). Thus, after *Piccinonna,* polygraph evidence may be admissible in several circumstances.

4. Because the polygraph evidence was used to corroborate Elortegui's testimony and that of his alibi witnesses, this Court clearly could have excluded it under rule 403 on the grounds that it was cumulative. Ironically, however, the greater the number of "cumulative" polygraph tests attesting to Petitioner's innocence, the greater the probability that the polygraph results are accurate. Although the accuracy rate of polygraph evidence is uncertain, it is generally agreed that the error rate is higher for innocent subjects. *See Commonwealth v. Mendes,* 406 Mass. 201, 547 N.E.2d 35 (1989) (three opinions as to accuracy: 97% for guilty, 92% for innocent; 84% for guilty, 53% for innocent; 74% for guilty, 72% for innocent).

5. The Eleventh Circuit has twice noted that the plurality opinion by Justice O'Connor in *Teague* is not binding precedent. *See Hall v. Kelso,* 892 F.2d 1541, 1543 n. 1 (11th Cir.1990); *Collins v. Zant,* 892 F.2d 1502, 1511 n. 10 (11th Cir.1990). Indeed, under the "narrowest concurrence rule," *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), the concurrence by Justice Stevens and Justice Blackmun, stating a somewhat different test than the one formulated by the plurality, should be binding precedent. *Hall,* 892 F.2d at 1543 n. 1. Despite this rule, the Supreme Court has adopted the

new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Teague*, 109 S.Ct. at 1073 (quoting *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (separate opinion of Harlan, J.). Second, new procedures will be applied retroactively when they meet a two-part test: 1) the procedure must be "implicit in the concept of ordered liberty," that is, it must alter the courts' understanding of the "bedrock procedural elements" necessary for a fair trial, *and* 2) a violation of the procedure must decrease "the likelihood of an accurate conviction." *Teague*, 109 S.Ct. at 1075–1077. Absent one of these two exceptions, in which the individual's interest in a trial free of constitutional error prevails, the interests of comity and finality preclude the retroactive application of new constitutional rules after all direct appeals have been exhausted. *See Teague*, 109 S.Ct. at 1073 (comity and finality must be considered to determine proper scope of habeas review).

■ Petitioner contends that the rule announced in *Teague* does not apply to the instant case. *Teague*, and subsequent decisions by the Supreme Court applying *Teague*, address the retroactive application of new laws on collateral review of state convictions pursuant to 28 U.S.C. § 2254. Petitioner contends that the case before the Court is distinguishable from those cases. Elortegui is a federal prisoner who moves to vacate his conviction pursuant to 28 U.S.C. § 2255.

Petitioner's contention is not entirely without merit. In his dissent, Justice Brennan explicitly notes that the plurality fails to address whether the *Teague* rule applies to federal prisoners. *Teague*, 109 S.Ct. at 1084 n. 1 (Brennan, J., dissenting). Moreover, the balance between an individual's interest in a trial free from constitutional error and the interests of comity and finality is different in federal cases than it is in state cases. Without the interest in comity, the balance shifts favorably to the individual, and it seems probable that the individual's interest in a constitutional trial would outweigh the federal government's interest in finality. *But see Hrubec v. United States*, 734 F.Supp. 60 (E.D.N.Y. 1990) (*Teague* analysis applicable to § 2255 proceedings because of government's interest in finality).

Nevertheless, the Court cannot hold today that *Teague* does not apply to federal prisoners seeking collateral review of their convictions. Although all of the decisions except *Hrubec, supra*, applying *Teague* to collateral attacks on federal convictions have done so silently, *see United States v. Ayala*, 894 F.2d 425 (D.C.Cir.1990); *Gilberti v. United States*, 731 F.Supp. 576 (E.D. N.Y.1990); *United States v. Makaweo*, 730 F.Supp. 1016 (D. Hawaii 1990); *United States v. Rubio*, 722 F.Supp. 77 (D.Del. 1989), at least one obvious reason exists for applying *Teague* to petitions brought pursuant to § 2255. Exempting federal prisoners from the *Teague* doctrine of retroactivity would result in the courts treating federal prisoners more favorably than state prisoners. The absence of comity concerns cannot alone justify such unequal treatment of state and federal prisoners on collateral review, and no other reason has been suggested for such disparate treatment. To hold that *Teague* does not apply to federal prisoners would create the very type of inequity that the *Teague* decision ostensibly was designed to remedy. 109 S.Ct. at 1072. Therefore, we must hold that *Teague* applies equally to motions to vacate pursuant to 28 U.S.C. § 2255 and petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

■ Turning to the facts of the instant case, it is clear that the other two conditions necessary for the application of the *Teague* rule against retroactively are met: Elortegui's conviction was final at the time *Piccinonna* was decided and Elortegui

---

plurality test as governing law in *Saffle v. Parks*, —— U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) and *Butler v. McKellar*, —— U.S. ——, 110

S.Ct. 1212, 108 L.Ed.2d 347 (1990). Therefore, the test set forth in Justice O'Connor's plurality opinion is now clearly the law of the land.

seeks the application of a new rule.[6] Determining whether a rule is "new" is, in the words of the Supreme Court, "admittedly often difficult." 109 S.Ct. at 1070. In the instant case, however, the Court need not struggle long to decide whether the rule announced in *Piccinonna* is new. The *Piccinonna* decision clearly represents a break with prior precedent holding polygraph evidence inadmissible *per se*. Therefore, as the first exception to *Teague* is clearly inapplicable to this case, the only question remaining is whether the rule announced in *Piccinonna* falls within the second *Teague* exception.

In *Teague*, the Court decided that a rule extending the Sixth Amendment to require a fair cross-section of the community on a petit jury is not a procedure that either implicates the fundamental fairness of the trial or increases the likelihood of an accurate conviction. 109 S.Ct. at 1077. The Court therefore held that such a rule would not be applied retroactively. *Id.* The Court gave only one example of a procedural right that would fall within the second exception to *Teague:* the right to counsel at trial. *Id.* at 1076.

In a subsequent case, *Saffle v. Parks,* — U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the Supreme Court applied *Teague* and held that a rule extending the Eighth Amendment to prohibit an instruction to the jury not to be swayed by sympathy for the defendant in death penalty cases would fall outside the second *Teague* exception. Justice Kennedy, writing for the majority of the Court, stated that "[w]hatever one may think of the importance of respondent's proposed rule, it has none of the primary and centrality of ... rules which may be thought to be within the exception." 110 S.Ct. at 1264. The Court further questioned whether such a rule would promote accuracy in the sentencing proceeding, as it would allow emotional appeals to the jury. In another case decided the same day as *Saffle, Butler v. McKellar,* — U.S. ——, 110 S.Ct. 1212,

108 L.Ed.2d 347 (1990), the Supreme Court held that the Fifth Amendment prohibition on police-initiated interrogation when a suspect has requested counsel in the context of another investigation should not be applied retroactively on collateral review. The Court found that the rule did not come within the second *Teague* exception because a violation of the rule would not diminish "the likelihood of obtaining an accurate determination [of guilt or innocence]...." 110 S.Ct. at 1218.

Finally, in a case decided last week, *Sawyer v. Smith,* — U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), the Supreme Court held that *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) should not be applied retroactively. *Caldwell* announced that it is unconstitutional in death penalty cases to mislead the jury as to their responsibility for the defendant's death, because the jurors' misapprehension could result in "substantial unreliability" and "bias in favor of death sentences." *Caldwell,* 105 S.Ct. at 2639–40. The Court found that the *Caldwell* rule did not fall within the second exception to *Teague,* because although applying *Caldwell* would enhance the accuracy of the proceeding, the rule was not "fundamental" to the fairness of the proceeding. 105 S.Ct. at 2645. The Court reasoned that it is

> not enough under *Teague* to say that a new rule is aimed at improving the accuracy of trial. More is required. A rule that qualifies under this exception must not only improve accuracy, but also 'alter our understanding of the bedrock procedural elements' essential to the fairness of a proceeding."

110 S.Ct. at 2831 (quoting *Teague,* 109 S.Ct. at 1076 (quoting *Mackey,* 91 S.Ct. at 1180–81.)).

The Eleventh Circuit also has addressed when new law falls within the second *Teague* exception. The Eleventh Circuit has rejected the contention that the Sixth Amendment right to counsel at arraign-

---

**6.** A conviction is obviously final either after the Supreme Court has rendered a decision on direct review or denied certiorari on direct review. If the Supreme Court has done neither of these things, then the conviction is final when the time for filing a petition of certiorari has elapsed. *Teague,* 109 S.Ct. at 1067.

ments or other similar proceedings should be applied retroactively. *Collins v. Zant,* 892 F.2d 1502 (11th Cir.1990). The Court found that the right to counsel at an arraignment was neither "implicit in the concept of ordered liberty," nor likely to increase the accuracy of the determination of guilt or innocence. *Id.* at 1512. In *Hall v. Kelso,* 892 F.2d 1541 (11th Cir.1990), the Eleventh Circuit held that the Due Process Clause prohibition against shifting the burden of proof to the defendant in a criminal case must be applied retroactively on collateral review. The court found that the rule against shifting the burden of proof is a bedrock criminal procedure, the violation of which implicates the accuracy of the conviction.[7]

Petitioner contends that *Piccinonna* falls within the second *Teague* exception because *Piccinonna* "provides a process for hearing evidence which goes to the heart of the factfinding process, to the heart of guilt or innocence." Petitioner's Supplemental Brief at 4. Although Petitioner may be correct that the admission of polygraph tests may enhance the likelihood of an accurate determination of guilt or innocence,[8] the argument sidesteps the issue presented by *Teague*. *Piccinonna* meets only part of the two-part test set forth by the Supreme Court. In *Teague,* the Court first limited the second exception to the rule against the retroactive application of new laws in collateral procedures to those procedures implicit in the concept of ordered liberty. 109 S.Ct. at 1075. Then, to avoid establishing the incorporation debate in yet another context, the Court further limited the scope of the second exception to those fundamental procedures "without which the likelihood of an accurate conviction is seriously diminished."

109 S.Ct. at 1077. The Court's analysis in *Sawyer, supra,* makes the dual nature of this test explicit. Adopting Petitioner's argument would require this Court to hold not only that the admission of polygraph evidence categorically increases the likelihood of accurate convictions, but also that a rule allowing the admission of polygraph evidence under two very narrowly defined circumstances is a "procedure implicit in the concept of ordered liberty." 109 S.Ct. at 1075.

To date, the Supreme Court has given only one example of a watershed rule of criminal procedure, the right to counsel at trial.[9] The Eleventh Circuit has provided an additional example of a procedure "implicit in the concept of ordered liberty:" the Due Process Clause prohibition against shifting the burden of proof to the defendant in a criminal case. The rule announced in *Piccinonna* is clearly not of the same ilk as these constitutional rules of criminal procedure. The Eleventh Circuit determined the scope of the admissibility of polygraph evidence, not by reference to the Constitution, but rather, by reference to Rule 702 of the Federal Rules of Evidence. Although fearful of stating the obvious, the Court must point out that such a rule does not even apply to the vast majority of criminal defendants who are tried in state court. It would be incongruous to hold that a rule that applies only to federal prisoners is a "watershed criminal procedure," or "implicit in the concept of ordered liberty."

Moreover, even under *Piccinonna,* the trial court must decide whether to admit the proffered polygraph evidence with reference to the Federal Rules of Evidence, unless the parties have stipulated to its

---

7. In *Clark v. Dugger,* 901 F.2d 908 (11th Cir. 1990), the court found that *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) should be applied retroactively. The Eleventh Circuit held that "[t]he text of *Caldwell* itself mandates that the rule it announces fall [sic] within the second exception." *Clark* at 912. *Sawyer, supra,* clearly overrules *Clark,* however.

8. But see note 4, *supra.*

9. In *Butler v. McKellar,* the Court implied that the Fifth Amendment bar on police-initiated interrogation when a suspect has requested counsel in a separate investigation might be a procedure implicit in the concept of ordered liberty. 110 S.Ct. at 1218. The Court, however, held that the rule did not fall within the second *Teague* exception because added restrictions on police investigations would not increase the likelihood of accurate determinations of guilt or innocence. *Id.*

admission in advance of the examination. It is well-established law that the trial court's evidentiary rulings will not be overturned absent an abuse of discretion. *United States v. Cohen*, 888 F.2d 770, 774 (11th Cir.1989). Clearly, the Court's application of a watershed rule of criminal procedure would not be reviewed under the "abuse of discretion" standard. Therefore, the Court holds that *Piccinonna* does not fall within the second *Teague* exception.

### C. *Supervisory Powers*

 Finally, Petitioner urges that, in the interests of justice, this Court should ignore *Teague* and give him the benefit of *Piccinonna*. As authority for this position, Petitioner cites *In re Furlong*, 885 F.2d 815 (11th Cir.1989). In *Furlong*, the Eleventh Circuit reversed the Bankruptcy Court's decision to follow the letter, rather than the spirit, of Fed.R.Civ.P. 5(b), which provides that documents shall be served on the attorney representing a party. As a result of strictly interpreting this rule, the bankruptcy court granted appellee's motion for judgment against the appellants although it was apparent that the appellants never actually received notice prior to the hearing on the motion. The Eleventh Circuit held that the court's inherent "supervisory power authorizes us to require a lower court to 'follow procedures deemed desirable from the viewpoint of sound judicial practice although in no-wise commanded by statute or by the Constitution.'" *Furlong*, 885 F.2d at 819 (quoting *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). The court went on to state that such power was used "sparingly." *Id.*

Though not present in *Furlong*, a review of cases in which the courts have exercised their supervisory powers reveals that one of primary purposes underlying the use of such power is to deter illegal conduct by the government. *See, e.g., United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). Obviously, Petitioner cannot allege that the government has behaved illegally in this case.

Although we decline comment on the full range of the courts' supervisory powers, we hold without hesitation that they should not be invoked in this case. The courts' supervisory powers clearly do not permit this Court simply to ignore the Supreme Court's recent decision in *Teague*, regardless of whether this Court approves of the effect of that decision. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (court invoking supervisory powers may not casually overlook balance struck between "societal costs and the rights of the accused").

ORDERED AND ADJUDGED that the supplemental motion to vacate based on *Piccinonna* is DENIED.

DONE AND ORDERED.